IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

MICHAEL ALLEN KOKOSKI,

        Petitioner,

v.                              Case No. 5:07-cv-00145

T.R. CRAIG, Warden,
FCI Beckley,

        Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (docket sheet document # 1). Also pending before the court are the following motions filed by Petitioner: Motion for Judgment (# 26), Motion for Judgment and to Expedite Case (# 28), Motion for Judgment to Restore 27 Days Good Time (# 29), Another Motion for Favorable Judgment (# 39), Motion for Immediate Release (# 43), and Motion for Immediate Consideration (# 50-2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PLAINTIFF'S CLAIMS FOR RELIEF

On September 20, 1994, following a guilty plea to one count of employing a person under eighteen years old to distribute LSD, in

violation of 21 U.S.C. §§ 841(a)(1) and 861, Petitioner was sentenced to 144 months in prison, followed by a six-year term of supervised release.  Petitioner was also ordered to pay a $5,000 fine.  (United States v. Kokoski, Case No. 5:92-cr-00090 (S.D. W. Va.)(Hallanan, J.)(hereinafter "the LSD conviction").

On April 28, 1996, while serving his 144-month sentence, Petitioner walked away from the satellite prison camp at FCI Beckley and remained at large until he was arrested in the State of Montana on unrelated charges on January 1, 1999.  Petitioner pled guilty to criminal mischief, and received a six-month (180-day) suspended sentence.  Petitioner was then returned to federal custody.

Petitioner was subsequently charged with escape, in violation of 18 U.S.C. § 751(a), for escaping from the satellite prison camp at FCI Beckley.  United States v. Kokoski, 5:96-cr-00064 (S.D. W. Va.)(Chambers, J.).  Petitioner pled guilty to the escape charge and was sentenced to 37 months in prison, which was to run consecutive to[1] his earlier sentence, followed by a three-year term of supervised release.  (Id., Judgment in a Criminal Case, # 92)(hereinafter "the escape conviction").

---

[1]  The judgment order in Petitioner's escape case states that the sentences are consecutive.  Subsequent proposed findings and recommendations submitted in Petitioner's post-conviction proceedings stated that the sentences were concurrent, but that was a typographical error that went uncorrected.  Such an error does not supersede the criminal judgment order.

2

Petitioner has since been credited with 180 days of prior custody credit, related to the time period from January 1, 1999 to June 29, 1999, which was the time period of Petitioner's suspended state sentence in Montana.

Petitioner's instant petition challenges the loss of 187 days of good conduct time (hereinafter "GCT"), resulting from eight disciplinary actions over the course of his incarceration. Petitioner's section 2241 petition does not specify the disciplinary actions that resulted in the loss of GCT, or the factual basis for his claim for relief.   Rather, Petitioner's section 2241 petition merely asserts that:

    1.    BOP issued bogus incident reports during past and unlawfully revoked my good time credit of 187 days using bills of attainder(s) or without due process of law.

    2.    BOP unlawfully and prospectively altered or revoked good time credit vested to me under the Sentence Reform Act of 1984 in violation of ex post facto clause of Constitution without due process of law.

(# 1 at 7).

On March 22, 2007, the undersigned entered an Order to Show Cause directing Respondent to file a answer or other response concerning Grounds One and Two of Petitioner's section 2241 petition by April 23, 2007.   (# 5).   Petitioner was given a deadline to file a reply by May 7, 2007.   (Id.)

After receiving an extension of time to file a response (## 13, 14), Respondent filed a Response to Order to Show Cause (# 15)

3

on April 27, 2007.  In that response, Respondent contended that Petitioner had not exhausted his administrative remedies concerning six of the eight disciplinary actions that resulted in the loss of the 187 days of GCT that is the subject of Petitioner's section 2241 petition.  Respondent also addressed the merits of Petitioner's claim concerning the two disciplinary actions that Respondent agreed had been exhausted through the administrative remedy process.

Petitioner disputed Respondent's contention that he had not exhausted his administrative remedies concerning the other six disciplinary actions that resulted in the loss of GCT, and provided evidence to support his argument that Respondent's tracking system for administrative remedies, known as SENTRY, is prone to human error.

After receiving additional briefing and evidence on the exhaustion issue, the undersigned determined that it would be more appropriate to address the merits of Petitioner's claims, notwithstanding the alleged failure to exhaust administrative remedies.  Accordingly, the undersigned ordered Respondent to file a supplemental response addressing the merits of Petitioner's claims concerning the other six disciplinary actions that resulted in the loss of GCT.  (# 44).  Respondent has objected to the undersigned's finding that Respondent has not sufficiently demonstrated that Petitioner failed to exhaust administrative

4

remedies concerning the other six disciplinary actions that resulted in the loss of GCT, but has provided a supplemental response addressing the merits of Petitioner's claims concerning the other six disciplinary proceedings that resulted in the loss of GCT. (# 48).

Petitioner has filed additional documents in which he asserts that Respondent has waived the right to address the merits of his claims on those six disciplinary actions, because Respondent only raised the affirmative defense of failure to exhaust in his initial Response to Order to Show Cause. Petitioner further asserts that he should prevail on the merits of his claim, and be entitled to immediate release, upon the restoration of the GCT that he lost. This matter is ripe for determination.

## ANALYSIS

### A.   PETITIONER'S HABEAS CORPUS PETITION IS MOOT.

Petitioner was released from FCI Beckley to begin serving his terms of supervised release on June 5, 2008. He is presently residing in Clarksville, Ohio. Due to Petitioner's release from custody, it appears that his petition for a writ of habeas corpus under 28 U.S.C. § 2241 is now moot.

Generally, a habeas corpus petition becomes moot once a petitioner is released from custody, unless the petitioner can show sufficient collateral consequences of the underlying proceeding. See Spencer v. Kenna, 523 U.S. 1, 7 (1998); see also Murphy v.

5

Hunt, 455 U.S. 478, 481 (1982)(an action is moot when "the issues presented are no longer 'live' or the parties lack a leagally cognizable interest in the outcome."). Although the Supreme Court has established a presumption that a wrongful conviction has continuing collateral consequences, the Court has refused to extend the presumption to cases where a conviction is not being attacked. Spencer, 523 U.S. at 8, 12-13.

In the instant case, Petitioner has challenged the Federal Bureau of Prisons' ("BOP") disallowance of 187 days of Good Conduct Time (GCT) through inmate disciplinary proceedings and further contends that the BOP disallowed GCT days that had already vested. Neither of these issues has any collateral consequences on Petitioner, as the amount of GCT credited towards Petitioner's prior sentences has no effect on the time he will serve on supervised release, or on any term of imprisonment he could receive in the future, should his supervised release be revoked.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's Petition for a Writ of Habeas Corpus (# 1) is rendered moot by virtue of his release from custody and the absence of collateral consequences. Thus, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** Petitioner's Petition for a Writ of Habeas Corpus (# 1) and **DENY AS MOOT** the following motions filed by Petitioner:  Motion for Judgment (# 26), Motion for Judgment and to Expedite Case (# 28),

Motion for Judgment to Restore 27 Days Good Time (# 29), Motion for Leave to File Another Motion for Favorable Judgment (# 38), Another Motion for Favorable Judgment (# 39), Motion for Immediate Release (# 43), Motion for Leave to File a Motion for Protective Order (# 45), Motion for Protective Order (# 46), and Motion for Leave to File Traverse and Motion for Immediate Consideration (# 50).

> **B.   THE UNDERSIGNED WILL, NEVERTHELESS, ADDRESS THE MERITS OF ALL OF PETITIONER'S CLAIMS.**

Should the presiding District Judge find that Petitioner's habeas corpus petition is not rendered moot by his release from custody, the undersigned has addressed the merits of the petition and proposes that the presiding District Judge **FIND** that Petitioner is not entitled to any relief on the grounds raised in his petition and in his motions for judgment.

Respondent initially filed a Response to the petition, in which Respondent only addressed the merits of Petitioner's claims concerning two of the eight disciplinary actions that resulted in the loss of GCT, and asserted that Petitioner had failed to exhaust his administrative remedies concerning the other six disciplinary actions, and thus, Petitioner could not pursue those claims in federal court.

Petitioner challenged Respondent's affirmative defense of exhaustion of administrative remedies, and ultimately contended that Respondent had waived the right to respond on the merits of

those claims.  Consequently, Petitioner requested summary judgment on his claims concerning those six disciplinary actions.

The undersigned is not persuaded by Petitioner's assertion that Respondent has waived the right to respond to the merits of Petitioner's claims concerning the other six disciplinary actions that resulted in the loss of GCT by asserting an affirmative defense of failure to exhaust administrative remedies.  The failure to demonstrate such an affirmative defense certainly does not justify summary judgment in Petitioner's favor on his claims for relief.  The undersigned proposes that the presiding District Judge **FIND** that a decision on the merits of Petitioner's claims is in the interest of justice.

### C.   PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF.

#### 1.   Petitioner was not improperly denied GCT.

Petitioner has asserted that the various disciplinary actions taken against him that resulted in the loss of GCT resulted from "bogus incident reports," using bills of attainder, and denied him due process of law.  Petitioner has not offered the court any explanation of how the incident reports or subsequent disciplinary actions are "bills of attainder."

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  Nixon v. Administrator of General Services, 433 U.S. 425, 468-469 (1977).

8

It is clear that the incident reports lodged against petitioner are not "bills of attainder."

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court addressed the process due inmates in prison disciplinary proceedings that may result in the loss of GCT.  Under Wolff, an inmate is entitled to: (1) written notice of the charged violation (within 24 hours of the disciplinary hearing), (2) disclosure of evidence against the prisoner, (3) the right to present evidence and the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation), (4) a neutral and detached hearing body, and (5) a written statement by the factfinders as to evidence relied on and reasons for disciplinary action.  Id. at 564.  The Supreme Court has also found that "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record."  Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985)(emphasis added).  The undersigned will address each incident report and the disciplinary actions that resulted in a loss of 187 days of Petitioner's GCT using this standard of review.  The facts supporting this discussion are taken from Respondent's Response to Order to Show Cause (# 15) and Respondent's supplemental "Response to Order Entered April 23, 2008" (# 48), and the documents and

declarations attached to each of those documents.

<u>Bureau of Prisons Inmate Discipline Process</u>

An overview of the Bureau of Prisons (hereinafter "BOP") Inmate Discipline Process will be helpful.  This discussion is taken from Respondent's Response to Order to Show Cause:

Authority for administering the federal prison system has been delegated by Congress to the BOP.  <u>See</u> 18 U.S.C. § 4042; 28 C.F.R. § 500 <u>et seq</u>.  This authority includes the duty to provide for the protection, instruction and discipline of BOP inmates.  <u>See</u> 18 U.S.C. § 4042(a)(3).  The BOP has promulgated rules for inmate discipline.  <u>See</u> 28 C.F.R. Part 541.

According to these rules, when BOP staff have a reasonable belief that an inmate has violated a BOP regulation, staff prepare an incident report.  28 C.F.R. § 541.14(a).  Staff provide the inmate with a written copy of the charges against him, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.  28 C.F.R. §§ 541.14(a), (b)(2).

An investigating officer then reads the charges to the inmate and takes the inmate's statement concerning the incident.  The investigating officer is supposed to advise the inmate of the right to remain silent, but inform him that his silence may be used to draw an adverse inference against him.  However, the inmate's silence alone may not be used to support a finding of guilt.  The investigating officers should record all steps and actions taken on

10

the incident report.  Then the report and all relevant materials are forwarded to the Unit Disciplinary Committee ("UDC") for an initial hearing.  28 C.F.R. § 541.14(b)(2).  According to Respondent's Response, a UDC consists of one or more staff members with the authority to hold an initial hearing upon completion of an investigation concerning the alleged misconduct.  28 U.S.C. § 541.2.  (# 15 at 3-4).

A UDC hearing is normally conducted within three work days from the time the staff became aware of the alleged infraction, excluding the day staff becomes aware of the alleged infraction, weekends and holidays.  The inmate is entitled to be present at the hearing, except during the deliberations of the decision makers, or if institutional security would be jeopardized by the inmate's presence.  The inmate is entitled to make a statement and to present documentary evidence on his own behalf.  28 C.F.R. §§ 541.15(b), (c).  (Id. at 4).

After considering all of the evidence presented at the hearing, the UDC renders a decision, which must be supported by "some facts," and if there is conflicting evidence, based upon the "greater weight of the evidence."  28 C.F.R. § 541.15(f).  (Id.) Respondent notes that the phrase "some facts" refers to facts indicating the inmate did commit the prohibited act, while the phrase "greater weight of the evidence" refers to the credibility of the evidence, not quantity or number of witnesses testifying.

11

(<u>Id.</u>)

The UDC either finds that the inmate committed the prohibited act as charged and/or a similar prohibited act, finds that the inmate did not commit the prohibited act as charged, or refers the case to the Disciplinary Hearing Officer ("DHO") for further proceedings.  28 C.F.R. § 541.15(f).  (<u>Id.</u> at 5).  The DHO is an independent hearing officer who is responsible for conducting discipline hearings and who imposes sanctions for incidents of inmate misconduct referred for disposition by the UDC.  28 C.F.R. § 541.2.  (<u>Id.</u>, n. 5).

When charges are referred to the DHO, all of the materials reviewed by the UDC are forwarded to the DHO, along with a brief statement of reasons for referral and any recommendations for disposition.  28 C.F.R. § 541.15(h).  The UDC advises the inmate of the rights afforded at the DHO hearing and asks the inmate to indicate a choice of staff representative, if any, and the names of witnesses the inmate wishes to call at the hearing, and what testimony they are expected to provide.  <u>Id.</u>  The inmate should list on the Notice of Disciplinary Hearing form all witnesses requested to appear.  (<u>Id.</u>)

At the DHO hearing, the inmate is entitled to make a statement and to present documentary evidence and witness testimony, subject to institutional security concerns.  28 C.F.R. 541.17(c).  The DHO considers all of the evidence presented at the hearing and renders

a decision that is to be based on at least some facts, and where there is a dispute in the evidence, based on the greater weight of the evidence.  The DHO prepares a record of the proceedings, which does not need to be verbatim.  The record documents the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO.  It also includes a brief statement of the reasons for the sanctions, if sanctions are imposed.  The DHO normally provides the inmate with a written copy of the decision and disposition within 10 days.  28 C.F.R. § 541.17(g).  (Id. at 6).

Petitioner's disciplinary proceedings

The undersigned will address the incident reports and disciplinary actions that resulted in the loss of Petitioner's GCT in the order presented by Respondent.  The undersigned will also address Petitioner's arguments raised in his Traverse documents.

*1.  Incident Report No. 940604*

According to Respondent's Response to Order to Show Cause, on November 24, 2001, while Petitioner was housed at FCI Manchester, Petitioner received an incident report for violations of code 203, Threatening a Staff Member; code 307, Refusing an Order; and code 312, Insolence, from Case Manager James J. Brown.  (# 15, Ex. 1, Decl. of Sharon Wahl, Attach. 1, Incident Report No. 940604, Sections 9 and 10).  According to the incident report:

> On the above date and time, while allowing Inmate Kokoski to call a family member to check on his

13

Grandmother's medical condition, he began discussing what sounded like business information.  I told Kokoski I did not let him call to discuss business.  Inmate Kokoski stated in a very belligerent and loud tone, "I'm not talking business buddy."  I ordered Inmate Kokoski to hang up the phone and he stated, "No, I can't do that." I then depressed the receiver and ended his call. Kokoski was escorted outside, handcuffed, and escorted down the sidewalk to the compound officer.  While escorting him, Kokoski stated I was a cold-hearted bastered [sic; bastard] and stated twice he was going to "Bust me in the Nose and splatter it all over my face." Compound escorted Kokoski to SHU.

(Id., Section 11).

A copy of the report was given to Petitioner on November 24, 2001, at 11:47 a.m.  (Id., Sections 14-16).  According to Respondent's Response, and the documents in support thereof, Petitioner was advised of his rights by the investigating officer, and he provided a statement.  The summary of his statement in the incident report states:

Inmate Kokoski stated he was using the phone because his 97 year old great grandmother was sick and he was only discussing conditions of her releasing from the hospital, not other business.  Inmate Kokoski stated he did not say he couldn't hang the phone up; he was talking to the other party on the phone and Mr. Brown must have incorrectly thought he was talking to him.  Inmate Kokoski also said that he did not threaten Mr. Brown, he only made the comment that if his grandmother died he would be surprised if he didn't break his face.

(Id., Section 24).

A UDC hearing was held on November 26, 2001.  (Id., Section 21).  When permitted to make a statement, Petitioner stated, "I'm guilty of Insolence and Refusing an Order."  (Id., Section 17). The UDC referred the charges to the DHO for further hearing and

14

sanctions greater than what were available at the UDC level. (Id., Section 19). The UDC recommended sanctions in accordance with the DHO's discretion. (Id., Section 20).

Petitioner was provided a Notice of Disciplinary Hearing Before the DHO form on November 26, 2001. (# 15, Ex. 1, Attach. 2). Petitioner indicated on that form that he wished to have Captain Gunter as a staff representative, and identified inmate W. Parker as a witness that he wished to call. (Id.) Petitioner was provided with a written notice of his rights. (# 15, Ex. 1, Attach. 3).

A DHO hearing was held on December 5, 2001. (# 15, Ex. 1, Attach. 4, DHO Report, Part I, Section B). At the start of the hearing, the DHO advised Petitioner of his rights and Petitioner stated that he understood those rights. (Id. Part III, Section B). Although Petitioner had requested a staff representative, he waived his right to a staff representative after learning that the staff member he had requested had a conflict of interest. (Id., Part II, Section C). Petitioner also waived his right to call his requested witness. (Id., Part III, Section C). Petitioner was provided an opportunity to make a statement at the hearing, and stated as follows:

> I'm guilty of disobeying an order and insolence. I didn't threaten anyone. My great grandmother was in the hospital three weeks. I called to talk to Chris to find out what happened. My grandmother had congestive heart failure. She said someone had to sign a form to accept responsibility and we were talking about signing papers.

15

> When Brown said that, I told him about my people.  I did
> say you're a cold-hearted bastard and I said that when he
> said that to me on the phone.  I told him I felt like
> slapping him.  I don't remember if I said that about
> threatening Brown to the Lieutenant.  My phone minutes
> were gone.  I didn't mean to say it like that to Brown
> even if that's how it sounded.  I didn't mean a threat to
> anyone.

(Id., Part III, Section B).

In addition to the incident report and the investigation, the
DHO considered a memorandum from Case Manager R. Massey.  The
memorandum stated:

> This memorandum is in support of a[n] incident report
> dated 11-24-2001, reported by Laurel B, Case Manager,
> Brown.  At approximately 9:20 A.M., Kokoski was told by
> Case Manager, Brown he could have a two minute phone call
> in order to check on the condition of his sick
> grandmother.  He found out her condition, and then began
> to talk about unrelated business matters.  Case Manager,
> Brown, then ordered him to hang the phone up, Kokoski,
> then stated in a hostile tone and manner, he could not do
> that.  Case Manager, Brown, then hung the phone up, and
> ordered Kokoski out of the office.  I escorted Kokoski,
> to the Laurel B, Officer Station, then to the porch.  At
> approximately 9:25 A.M., Case Manager, Brown and myself
> were escorting Kokoski to the compound officer, when
> Kokoski, began threatening Case Manager, Brown, by
> stating twice he was going [sic; to] bust his nose all
> over his face.

(# 15, Ex. 1, Attach. 5).

Based upon all of this evidence, the DHO found Petitioner
committed the acts as charged (code 307, Refusing an Order; code
312, Insolence; and code 203, Threatening a Staff Member).  (# 15,
Ex. 1, Attach. 4, Part IV, Section A, and Part V).  The DHO relied
upon the written statement of the reporting staff member and the
written statement of Case Manager Massey, and Petitioner's

16

admissions to some of the conduct. The DHO found Petitioner's denial of other conduct not credible. The DHO found that Petitioner's testimony during the hearing contradicted his earlier statement, and attributed greater credibility to the reporting staff members. (<u>Id.</u>, Part V). The DHO also noted that Petitioner made no complaints about procedural errors during the hearing. (<u>Id.</u>, Part III).

The DHO sanctioned Petitioner to the disallowance of 27 days of GCT and 15 days of disciplinary segregation for code 203; 10 days of disciplinary segregation for code 312; and 15 days of disciplinary segregation and six months loss of phone privileges for code 307. (<u>Id.</u>, Part VI). The DHO listed the reasons for imposing the sanctions. (<u>Id.</u>, Part VII).

Petitioner was advised of the findings and given a written copy of the report on January 11, 2002. He was also advised of his right to appeal the disciplinary action within 20 days under the Administrative Remedy Program. (<u>Id.</u>, Sections VIII and IX). The DHO's decision was upheld by the Regional and Central Offices. (# 15, Ex. 1, ¶ 7).

Based upon a review of the documents submitted by Petitioner, it does not appear that Petitioner has specifically challenged the evidence put forth by Respondent on this disciplinary action. As noted by Respondent, Petitioner's present contention that each of the incident reports filed against him was false, essentially

17

challenges the weighing of the evidence by the DHO.

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  <u>See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under <u>Wolff v. McDonnell</u>, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 27 days of GCT as a sanction in this disciplinary action.

### 2.  Incident Report No. 994020

On December 5, 2001, Senior Officer A. Williams at FCI Manchester, charged Petitioner with a violation of code 297, Use of

Telephone for Abuses Other Than Criminal Activity; and code 307, Refusing to Obey an Order.  (# 15, Ex. 1, Attach. 6, Incident Report No. 944020, Sections 9, 10 and 12).  The incident report indicated that, on December 5, 2001, while the reporting officer was monitoring telephone calls, Petitioner was overheard speaking on the telephone, informing a female that he had received six months of telephone restriction from the DHO.  Specifically, the incident report states:

> On 12-5-01, at 1828 hours I monitored a telephone call made by inmate Kokoski, Michael 02115-061.  While monitoring the call I heard inmate Kokoski inform the female that he received six months telephone restriction from the DHO.  I proceeded to verify inmate Kokoski's disciplinary record.  The record indicated that on 12-5-01 at 1255 hours the DHO imposed a telephone restriction sanction on inmate Kokoski until 6-4-02.  Another female began talking and inmate Kokoski told her also that he was on telephone restriction for six months but she could come and visit him.  The call was terminated.

(# 15, Ex. 1, Attach. 6, Section 11.).

A copy of the incident report was given to Petitioner at 9:32 a.m. on December 6, 2001.  (Id., Section 14-16).  Petitioner was advised of his rights by the investigating officer and Petitioner provided a statement to the investigating officer in which he stated that "he was awarded telephone restrictions as a result of his DHO Hearing on 12-05-01."  (# 15, Ex. 1, Attach. 6, Section 24).  Inmate Kokoski also stated that he did use the telephone on 12-05-01, after he had completed his DHO hearing.  (Id.)

19

A UDC hearing was held on December 10, 2001.  (<u>Id.</u>, Section 21).  Petitioner was provided an opportunity to make a statement at the UDC hearing.  He stated as follows:

> The phone was broke in SHU from 11-31-2001 until Wednesday, December 5, 2001.  The officer came by after I had been seen by the DHO, told me the phone was fixed and asked if I wanted to use it.  I called and talked to my mother and wife.

(<u>Id.</u>, Section 17).  The UDC referred the charges to the DHO for further hearing because of the serious nature of the charge and because it was a violation of a previous DHO sanction.  (<u>Id.</u>, Sections 18 and 19).  The UDC recommended that the DHO impose 30 days of disciplinary segregation and loss of telephone privileges for a year.  The UDC also noted that code 306, Refusing a Program Assignment was a more appropriate code than 307, Disobeying an Order.  (<u>Id.</u>)

On December 10, 2001, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO.  Petitioner indicated that he wished to call Case Manager Gibson as a staff representative.  (# 15, Ex. 1, Attach. 7).  Petitioner also identified Officer Gay as a witness.  Petitioner stated that Officer Gay would testify that he came to get Petitioner and asked if he wanted to use the telephone and would attest that the telephones were broken.  (<u>Id.</u>)  Petitioner was also notified of his rights at that time, but refused to sign both forms.  (# 15, Ex. 1, Attach. 8).

A DHO hearing was held on December 20, 2001.  (# 15, Ex. 1, Attach. 9, Part I, Section B).  Petitioner was advised of his rights and stated that he understood those rights.  (Id., Part III, Section B).  Although previously requested, Petitioner waived his rights to have a staff representative and to call a witness.  (Id., Part II, Section C).  Petitioner was provided an opportunity to make a statement.  He stated:

> "I'm guilty, guilty, guilty.  I did it.  The telephone had been broke for five days.  Officer Gay asked me if I wanted to use the phone.  I did not intend to disrespect you.  If Ms. Gibson hadn't talked to you, I would have thought your decision was final."

(Id., Part III, Section B).

Petitioner also provided a hand-written statement for the DHO to consider.  (Id.)  The hand-written statement indicated that Petitioner had requested that Case Manager Gibson intercede on Petitioner's behalf with the DHO concerning the sanctions that had just been imposed on Petitioner on December 5, 2001, at his prior DHO hearing.  Case Manager Gibson apparently told Petitioner that the DHO had told her he "would take her request into consideration."  Therefore, Petitioner did not believe that the sanctions were final at the time he used the telephone on December 5, 2001.  (# 15, Ex. 1, Attach. 10).  Petitioner's statement adds:

> Then, later that evening, C.O. Gay came to my cell on A.D. range and said, "Kokoski, its your turn to use the phone" - and I went to use the phone, informing my family that the staff at FCI Manchester had allowed me to make one last phone call that evening before losing my phone privileges for six months.

21

> The phone monitor hear me tell this to my family - disconnected our phone call and wrote me a [shot?]
>
> Also, the phone at SHU had been broken for four days in a row - before this incident took place. So I had requested to use the phone on November 31st, four days before the DHO.

(<u>Id.</u>)

The DHO also noted that Petitioner made no complaints about procedural errors during the hearing. (# 15, Ex. 1, Attach. 9, Part III). The DHO considered all of the evidence and found Petitioner guilty of a violation of code 307, Refusing to Obey an Order. (<u>Id.</u>, Part V). The DHO relied upon the reporting officer's report, reciting the written report, Petitioner's disciplinary history verifying that he was on phone restriction, and Petitioner's admission that the report was true. (<u>Id.</u>)

Petitioner was sanctioned to 15 days of disciplinary segregation, 365 days of loss of phone privileges, six months loss of commissary privileges and he was disallowed 13 days of GCT. (<u>Id.</u>, Part VI). The DHO listed the reasons for imposing these sanctions. (<u>Id.</u>, Part VII).

Petitioner was advised of the findings, the specific evidence that the DHO relied on, the sanctions and the reason for the sanctions. Petitioner was also advised of his right to appeal the action within 20 days under the Administrative Remedy Program. (<u>Id.</u>, Part VIII). Petitioner initially received a copy of the report on February 6, 2002; however, the report was subsequently

amended.  A copy of the amended report was provided to Petitioner on March 21, 2002.  (Id., Part IX).

Petitioner appealed the disciplinary action to the Regional and Central Office levels, and the action was upheld.  (# 15, Ex. 1, ¶ 7).

Again, Petitioner has not specifically challenged the facts as set forth by Respondent.  Petitioner only makes a conclusory assertion that this incident report was "bogus," notwithstanding Petitioner's admission to the charge at his DHO hearing.

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under <u>Wolff v. McDonnell</u>, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 13 days of GCT as a sanction in this disciplinary action.

### 3. Incident Report No. 972452

On March 12, 2002, while housed at FCI Manchester, Petitioner was charged with a violation of code 203, Threatening Another Person. The incident report, filed by Morris Grundy, the Cook Supervisor, states:

> Aprrox. 17:45, I ordered inmate Kokoski (02115-061) to go finish his assign duty and he told me he can't do that because of his medical condition. Inmate Kokoski (02115-061) was still talking and I Cook Supervisor Grundy pointed to his assign work area and Kokoski said "I will punch you in your fuckin' nose if you point at me again." Cook Supervisor J. Spurlock heard him also.

(# 48, Ex. 1, Attach. 1, Section 11). A copy of this incident report was given to Petitioner on March 12, 2002 at 8:33 p.m. (<u>Id.</u>, Sections 14-16).

A UDC hearing was held on March 13, 2002. (<u>Id.</u>, Section 21). Petitioner was given an opportunity to make a statement at the hearing, but he refused to give his inmate number, became disruptive, and was returned to his cell. (<u>Id.</u>, Section 17). The UDC referred the charge to the DHO for sanctions greater than what were available at the UDC level. (<u>Id.</u>, Sections 18B and 19). The

24

UDC recommended that the DHO impose the loss of all available GCT, 60 days of disciplinary segregation and a disciplinary transfer. (Id., Section 20).

On March 13, 2002, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO.  Petitioner indicated that he did not wish to have a staff representative or any witnesses.  (# 48, Ex. 1, Attach. 2).  Petitioner was also notified of his rights at that time.  Petitioner refused to sign both of these forms.  (# 48, Ex. 1, Attachs. 2 and 3).

A DHO hearing was held on March 20, 2002.  (# 48, Ex. 1, Attach. 4, Part I, Section B).  Petitioner was advised of his rights and stated that he understood those rights.  (Id., Part III, Section B).  Petitioner waived his rights to have a staff representative and to call witnesses.  (Id., Part II, Section A and Part III, Section C).  Petitioner denied the charges and was provided an opportunity to make a statement.  He stated:

> I'm not guilty.  My back is messed up and I have certain
> medical restrictions.  Mr. Grundy keeps riding me.  I
> finished my job ad [sic; and] was sitting down working on
> my school work.  Mr. Grundy yelled at me to get the seg
> carts.  I told him I didn't want to pull my back out.  He
> told me to go back to the dish room and finish my work
> there.  While he was telling me this, he was using his
> radio to point at me and his antenna almost hit me in the
> eye.  I tried to get away from him.  I told him if he
> didn't quit I might punch him in the nose and not mean
> too [sic; to].  I talked to the SID Lieutenant about
> this.  I didn't mean it as a threat, I just wanted him to
> quit.

(Id., Part III, Sections A and B).  In addition to the incident

25

report, the DHO considered a memorandum from J. Spurlock, Cook Supervisor, which noted that Spurlock heard Petitioner say he was going to punch Mr. Grundy in the nose.  (# 48, Ex. 1, Attach. 5).

Based upon this evidence, the DHO found that Petitioner committed a violation of code 203, Threatening a Staff Member. (Id., Part IV, Section B).   The DHO relied upon the written statement of the reporting staff member and the written statement of Cook Supervisor Spurlock.   The DHO considered Petitioner's partial admission and also considered his denial of threatening Mr. Grundy, but found the denial to be not credible.   The DHO attributed greater credibility to the reporting staff member and Mr. Spurlock's statement.  (Id., Part V).

The DHO sanctioned Petitioner to the disallowance of 27 days of GCT and 30 days of disciplinary segregation.  (Id., Part VI). The DHO listed the reasons for imposing the sanctions.  (Id., Part VII).

Petitioner was advised of the findings, the specific evidence that the DHO relied on, the sanctions and the reason for the sanctions.  Petitioner was also advised of his right to appeal the action within 20 days under the Administrative Remedy Program. (Id., Part VIII).   Petitioner received a copy of the report on April 19, 2002.  (Id., Part IX).

On January 10, 2008, Petitioner filed a "Motion for Judgment to Restore 27 Days Good Time" (# 29), asserting that the staff

member who filed this incident report against him had been charged with attempted murder of an inmate. The motion states [misspellings corrected]:

> Petitioner recently learned that (former) Cook Supervisor T. Grundy stabbed an inmate in the chest with a six inch stainless steel cooking thermometer resulting in his arrest for "Attempted Murder" and serious injury to the inmate, during Mr. Grundy's employment with the Federal Bureau of Prisons, at FCI Manchester. Giving credence to Petitioner's claims that T. Grundy attempted to assault him, by backing Petitioner up against a wall and trying to jab his eyes out with his radio antenna during March of 2003. Resulting in a bogus incident report alleging that Petitioner had threatened Grundy which took 27 days good time away from Petitioner, based upon Grundy's false statements, that appear to be unreliable and incredible in light of his subsequent assault of another inmate with his pocket cook thermometer.

(# 29 at 1). Petitioner's motion asserts that "it should be clear that there was never any credible evidence for DHO to rely upon to determine that Petitioner committed the prohibited act. (Id. at 2). Petitioner repeats this argument in his most recent Traverse. (# 50 at 3-4).

The undersigned does not find that the evidence concerning the alleged attempted murder charge against Cook Supervisor T. Grundy alters the DHO's determination that the greater weight of the evidence supported a finding of Petitioner's guilt on this charge. The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and

27

was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  <u>See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under <u>Wolff v. McDonnell</u>, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 27 days of GCT as a sanction in this disciplinary action.

*Incident Report No. 1060066*

On December 28, 2002, while housed at FCI Manchester, Petitioner was charged with a violation of code 297, Use of Telephone for Abuses Other Than Criminal Activity.  The incident report, filed by Senior Officer A. Williams, indicates that, while Petitioner was on telephone restriction, the telephone monitor heard what he believed to be Petitioner's voice on the phone.  The incident report states:

28

On 12-28-02 at 1310 hours I monitored a telephone call listed as being made by inmate Richardson, Joseph, 10260-026. While monitoring the call, which was to 9373823721, I heard an inmate voice that sounded like inmate Kokoski, Michael 02115-061. I notified the Laurel B. unit officer, officer Hall, who identified inmate Kokoski as the inmate on the telephone. Inmate Kokoski used inmate Richardson's PIN number and consumed eleven minutes from inmate Richardson's account.

(# 48, Ex. 1, Attach. 6, Section 11). A copy of the incident report was provided to Petitioner on December 28, 2002 at 6:46 p.m. (<u>Id.</u>, Sections 14-16).

A UDC hearing was held on December 31, 2002. (<u>Id.</u>, Section 21). Petitioner declined the opportunity to make a statement at the UDC hearing. (<u>Id.</u>, Section 17). The UDC referred the charges to the DHO for further hearing for sanctions greater than were available at the UDC level. (<u>Id.</u>, Sections 18B and 19). The UDC recommended that the DHO impose sanctions within the DHO's discretion. (<u>Id.</u>, Section 20).

On December 31, 2002, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO. Petitioner indicated that he wanted to have S. Cottrell as a staff representative, and that he did not wish to call any witnesses. (# 48, Ex. 1, Attach. 7). Petitioner was also notified of his rights at that time. Petitioner refused to sign both of these forms. (# 48, Ex. 1, Attachs. 7 and 8).

A DHO hearing was held on January 23, 2003. (# 48, Ex. 1, Attach. 9, Part I, Section B). Petitioner was advised of his

rights and stated that he understood those rights. (Id., Part III, Section B). Petitioner's staff representative also appeared at the hearing. (Id., Part II, Sections A and B). Petitioner admitted the charges and was provided an opportunity to make a statement. He stated:

> I committed that. I don't know if I was going to reimburse him, but I would help him out with cigarettes or coffee. I celled with him in the multipurpose room when he first got there. He didn't really have anyone that he called. He told me, since I had things going on in court, that if I needed to call I could. I didn't mean to. I don't have an attorney on the street. I'm my own attorney. I regret using his phone and getting him in trouble. It's a no brainer that I was wrong. I try to stay out of trouble. I'm going to try to stay clear. I don't know much about Joe's case. Take my Good Time instead of his."

(Id., Part III, Sections A and B).

In addition to the incident report, the DHO considered a written statement of Correctional Officer P. Hall, which stated:

> On December 28, 2002, at approximately 1:30 p.m., I was contacted by Telephone Monitor, Officer Williams, and was asked to identify the inmate on phone # 1699. I observed Inmate Kokoski # 02115-061, on this specific telephone.

(Id., Part V; # 48, Ex. 1, Attach. 10). The DHO also considered two printouts from the BOP's Inmate Telephone System. (# 48, Ex. 1, Attach. 9, Part V; # 48, Ex. 1, Attach. 11).

Based upon the evidence presented, the DHO found that Petitioner committed a violation of code 297, Abuse of Telephone, Non-Criminal. (Id., Part V). The DHO relied upon the written statement of the reporting staff member and the written statement

of Officer Hall, the admission of Petitioner, and the printouts from the telephone system.  The DHO found that the greater weight of the evidence supported a finding of guilt.  (Id.)

The DHO sanctioned Petitioner to the disallowance of 27 days of GCT, 30 days of disciplinary segregation, which was suspended pending 180 days of clear conduct, a six-month loss of visiting privileges, a twelve-month loss of commissary privileges, an eighteen-month loss of telephone privileges, and a quarters change in effect for six months.  (Id., Part VI).  Petitioner was advised of the findings, the specific evidence that the DHO relied on, the sanctions and the reason for the sanctions.  (Id., Part VII).

The DHO listed the reasons for imposing the sanctions.  The DHO specifically noted as follows:

> This incident report represents a repeated effort by you
> to violate sanctions imposed upon you.  The DHO believes
> that the harshest sanctions should be applied.  The DHO
> is imposing a sanction of 30-days Disciplinary
> Segregation as punishment for this act.  However, the DHO
> is suspending this portion of the sanction pending 180
> days clear conduct.  This suspended sanction need not
> come to bare [sic; bear] if you do not incur any
> additional incident reports in the near future.  The DHO
> is also imposing a sanction of a Disallowance of 27-Days
> Good Conduct Time, a loss of Telephone Privileges for a
> period of 18-months, a Loss of Commissary Privileges for
> a period of 12-months, a Loss of Visiting Privileges for
> a period of 6-months, and a Change of Quarters in hopes
> that it will prompt you to modify your behavior and deter
> you and others from committing a similar act in the
> future.

(Id.)  Petitioner was also advised of his right to appeal the action within 20 days under the Administrative Remedy Program.

31

(Id., Part VIII).   Petitioner received a copy of the report on February 14, 2003.  (Id., Part IX).

Petitioner's most recent Traverse asserts that the "UDC/DHO refused to accept Petitioner's written statements at the hearings[2]; as required of due process under Wolff, supra.  Then the Bureau destroyed Petitioner's Administrative Remedies complaining of these facts.  And the sanctions imposed were unusually severe."  (# 50 at 5).

The undersigned notes that Petitioner admitted the conduct and asked that his GCT, rather than that of the inmate whose phone time he used, be taken.  (# 48, Ex. 1, Attach. 9, Part III B).

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  See

---

[2] According to the DHO's report, however, Petitioner stated at the hearing that he had no documents for the DHO to consider. (# 48, Ex. 1, Attach. 9, Part III B).

<u>Superintendent, Massachusetts Correctional Institution, Walpole v.</u>
<u>Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at
19-20).

Accordingly, based upon the evidence before this court, the
undersigned proposes that the presiding District Judge **FIND** that
Petitioner was afforded the rights required under <u>Wolff v.</u>
<u>McDonnell</u>, 418 U.S. at 564, and that there was no violation of
Petitioner's due process rights in the loss of 27 days of GCT as a
sanction in this disciplinary action.

*Incident Report No. 118970*

On February 4, 2004, while housed at FCI Manchester,
Petitioner was charged with a violation of codes 224 and 307,
Assault and Refusing an Order.  The incident report, filed by
Senior Officer W. Johnson, indicates:

> [On 2-04-04 at 10:10 a.m.] I removed Inmate Kokoski #
> 02115-061 from cell 226 to escort him to a DHO hearing.
> When the inmate exited the cell, I told him to stand by
> the door so I could remove the cuffs from the other
> inmate assigned to the cell.  Inmate Kokoski began
> walking down the range.  I ordered Inmate Kokoski to
> "stop" and return to the cell door.  Inmate Kokoski
> continued down the range, I again ordered Inmate Kokoski
> to stop.  I then left the open food trap and attempted to
> stop Inmate Kokoski from moving further down the range.
> I secured his arm and turned him back toward the cell,
> when I did this he pulled away from me and struck me with
> his left shoulder on my left shoulder and chest.  Due to
> the inmate's actions, I attempted to place him on the
> wall due to his continued aggressive behavior I moved him
> to the floor.

(# 48, Ex. 1, Attach. 12, Section 11).

33

A copy of the incident report was provided to Petitioner on February 5, 2004 at 8:20 p.m.  (<u>Id.</u>, Sections 14-16).  Petitioner was advised of his rights by the Investigating Lieutenant, and Petitioner provided the following statement:

> They put "Diamond" in the cell with me; he wears panties. I didn't want him in my cell.  I was walking down the hallway; I was looking to see if the inmate next door to me had a cellie.  I did pull my shoulder back when Johnson was escorting me.  I didn't resist and I didn't hit him.

(<u>Id.</u>, Section 24).

A UDC hearing was held on February 10, 2004.  (<u>Id.</u>, Section 21).  Petitioner was provided an opportunity to make a statement at the hearing.  He stated:

> That's not possible for me to strick [sic; strike] him with my left shoulder with my hands behind my back. Officer Johnson assaulted me.  I request the videotape.

(<u>Id.</u>, Section 17).  The UDC referred the charges to the DHO for further hearing for sanctions greater than were available at the UDC level.  (<u>Id.</u>, Sections 18B and 19).  The UDC recommended that the DHO impose loss of GCT, disciplinary segregation, and a disciplinary transfer.  (<u>Id.</u>, Section 20).

On February 10, 2004, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO.  Petitioner indicated that he wanted to have Tracy Polston, Engineer Technician, as a staff representative, and that he wish to call inmate Norman Thomas as a witness.  (# 48, Ex. 1, Attach. 13).  Petitioner was also notified of his rights at that time.  (# 48, Ex. 1, Attachs. 13 and 14).

A DHO hearing was held on August 11, 2004. (# 48, Ex. 1, Attach. 15, Part I, Section B). Petitioner was advised of his rights and stated that he understood those rights. (Id., Part III, Section B). Unit Manager J. Bishop appeared at the hearing as Petitioner's staff representative. (Id., Part II, Sections A and B).

Petitioner was provided an opportunity to make a statement at the hearing. His testimony was summarized as follows:

> The inmate testified he had no documents for the DHO to consider. The inmate testified that, "I don't remember it that way. They put me in the cell with someone that I didn't want to cell with. They pulled me out. I was looking in the cell to get Tomcat's (Norman Thomas) attention. Johnson told me not to go any further. Johnson grabbed my arm and yanked me back. I went like this. He slammed me against the wall and then on the floor. I don't think it's possible for me to hit anyone like this. That's how I remember it. SHU was overcrowded. They had DHO going on. It was a mess. I had just woken up." Inmate Thomas' statement was read and Inmate Kokoski stated, " That sounds about right. I know my elbow turned black and hurt for about a month." Inmate Langlinais' statement was read and Inmate Kokoski laughed and stated, "That's a good one." Inmate Covington's statement was read and Inmate Kokoski laughs and stated, "I don't think that's very accurate." After viewing the video, Inmate Kokoski states, "I didn't realize I come up that far. I don't know what that move was. I remember turning, but I didn't think I hit anybody. I thought I pulled from him right then. (At the start of Johnson coming to get him). It sure did look like I did, but I sure didn't mean to. I didn't realize I had walked up the range that far. I can see where I was wrong like that. I didn't even realize I elbowed him like that. Can I plead insanity? I had just woke up. I never remembered him turning me around and leading me back that way." The inmate made no complaints about procedural errors during the hearing.

(Id., Part III, Section B).

As noted above, in addition to Petitioner's statements, the DHO considered the statements of three other inmates, all of whom had been transferred to other BOP facilities. Thus, they could not attend the hearing in person. Inmate Thomas stated:

> I was in the cell on the day Inmate Kokoski was put to the floor. Mr. Johnson was taking Kokoski out to witness for another inmate. He stopped by my cell door and asked how I was doing and asked if he could be my cellmate. Mr. Johnson asked him to stop twice, but Kokoski was busy talking to me. I went to wash my face, when I heard Mr. Johnson yell at him, when I tell you to stop, stop and slammed him against the wall. While Kokoski was screaming for help, then Mr. Johnson slammed him flat on his back and got on top of him to roll him over. That's when other officers came to help Mr. Johnson. I didn't see if Kokoski resisted or not. To my knowledge, this is all I witnessed.

(Id., Part III, Section C3). Inmate Langlinais stated, "I Louis Langlinais did not see anything while in the SHU at FCI Manchester." (Id.) Inmate Covington stated, "I Inmate Covington seen inmate Kokoski and C.O. Johnson have an altercation. Mr. Johnson grabbed Kokoski by the arm and Kokoski took a swing at him, actually he elbowed Johnson. I was in the second cell on the right on C-Range." (Id.)

The DHO also considered written memoranda from eight staff members, some medical records and a video tape of the incident. (Id., Part III, Section D and Part V). Considering all of this evidence, the DHO found that Petitioner had committed a violation of codes 224 and 307, Assault and Refusing an Order. (Id., Part IV, Section A).

36

The DHO's findings detailed the evidence that the DHO relied upon, and stated that the greater weight of the evidence supported a finding of guilt. (<u>Id.</u>, Part V). The DHO sanctioned Petitioner to the disallowance of 27 days of GCT and 30 days of disciplinary segregation for the violation of code 224 (Assault), and a disallowance of 13 days of GCT, 15 days of disciplinary segregation, and a loss of three months of visiting commissary and telephone privileges for the violation of code 307 (Refusing an Order). (<u>Id.</u>, Part VI). The report also set out the DHO's reasons for imposing the sanctions. (<u>Id.</u>, Part VII).

On September 7, 2004, Petitioner was provided a copy of the DHO's report and was advised of his right to appeal the disciplinary action within 20 days under the Administrative Remedy Program. (<u>Id.</u>, Parts VIII and IX).

Petitioner's most recent Traverse asserts as follows:

> Staff did not provide Petitioner a copy of the incident report within 24 hours of the time staff became aware of the incident. And UDC did not hold its hearing within 3 business days of the incident, excluding weekends and holidays – and the reasons of delay were not noted on the incident report by UDC at the time of the hearing, on February 10, 2004. All in violation of Petitioner's due process rights under the prongs of <u>Wolff</u>, <u>supra</u>, and in violation of 28 C.F.R. 541 and 542. And then destroyed Petitioner's administrative remedies, in further violation of due process.

(# 50 at 6).

The undersigned notes that the only time requirement under <u>Wolff</u> is that the inmate receive written notice of the charge

37

within 24 hours of a disciplinary hearing.  There are no other time requirements necessary to comport with federal due process.  The BOP's alleged failure to conduct the hearings in strict accordance with the timelines set forth in the regulations is not sufficient to demonstrate a federal due process violation.  <u>See</u>, *e.g.*, <u>Flanagan v. Shively</u>, 783 F. Supp. 922, 931 (M.D. Pa. 1992)("The Constitution does not require strict adherence to administrative regulations and guidelines"); <u>see also</u> <u>Thibodeau v. Watts</u>, 2006 WL 89213 *4 (M.D. Pa., Jan. 11, 2006).  Therefore, petitioner's complaints to that effect lack merit.

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action.  Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  <u>See</u> <u>Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

38

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under <u>Wolff v. McDonnell</u>, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 40 days of GCT as a sanction in this disciplinary action.

*Incident Report No. 1188511*

On February 5, 2004, while housed at FCI Manchester, Petitioner was charged with a violation of code 312, Insolence Towards Staff Member, and a violation of code 404, Using Abusive or Obscene Language.  The incident report, which was filed by Laurel Unit Counselor R.L. Hall, states:

> At approximately 12:45 p.m. [on February 5, 2004], While conducting my rounds in Special Housing Unit (SHU), I approached the cell door of inmate Kokoski, 02115-061. Inmate Kokoski was standing at the cell door looking at me.  I asked inmate Kokoski if he needed anything from the Unit.  At that time, inmate Kokoski looked at me and said "FUCK YOU."

(# 48, Ex. 1, Attach. 16, Section 11).

A copy of the incident report was provided to Petitioner on February 5, 2004 at 3:00 p.m.  (<u>Id.</u>, Sections 14-16).  Petitioner was advised of his rights by the Investigating Lieutenant, and Petitioner provided the following statement:

> I'm not wanting to collect shots.  I did say that to Mr. Hall, but I said it jokingly.  I've don't [sic; done] this with him before; I'm not trying to get shipped to a penitentiary.

(<u>Id.</u>, Section 24).

A UDC hearing was held on February 10, 2004.  (Id., Section 21).  Petitioner was provided an opportunity to make a statement at the hearing.  He stated, "Of course I said that, but I didn't mean anything by it."  (Id., Section 17).  The UDC referred the charges to the DHO for further hearing based upon the seriousness of the incident report and the frequency of the reports.  (Id., Sections 18B and 19).  The UDC recommendation appears to be incomplete on the incident report form.  (Id., Section 20).

On February 10, 2004, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO.  Petitioner indicated that he wanted to have Tracy Polston, Engineer Technician, as a staff representative, and that he did not wish to call any witnesses.  (# 48, Ex. 1, Attach. 17).  Petitioner was also notified of his rights at that time.  (# 48, Ex. 1, Attachs. 17 and 18).

A DHO hearing was held on May 19, 2004.  (# 48, Ex. 1, Attach. 19, Part I, Section B).  Petitioner was advised of his rights and stated that he understood those rights.  (Id., Part III, Section B).  Case Manager S. Messer appeared at the hearing as Petitioner's staff representative.  (Id., Part II, Sections A and B).

Petitioner was provided an opportunity to make a statement at the hearing.  According to the report, Petitioner presented a three-page letter to the DHO relating to alleged procedural errors and violations of policy.  The DHO addressed these issues with Petitioner; however, Petitioner then became insolent with the DHO

40

and was told to either follow the rules or leave the hearing.
Petitioner chose to leave the hearing.  His staff representative
remained in the hearing, but did not make a statement.  (<u>Id.</u>, Parts
III and V).

The DHO considered the incident report, and Petitioner's lack
of statement at the hearing in rendering a decision.  The report
states:

> Inmate Kokoski exercised his right not to attend the DHO
> hearing.  The DHO drew an adverse inference from the lack
> of statement from inmate Kokoski.  The DHO believes that
> if the written statement of the reporting staff member
> were not accurate, inmate Kokoski would have remained at
> the DHO Hearing and offered evidence on his behalf.
>
> Therefore, having considered all relevant evidence, the
> DHO finds that the greater weight of the evidence
> supports the finding that you committed the prohibited
> act of Insolence, code 312.

(<u>Id.</u>, Part V).  Petitioner was not found guilty of a violation of
code 404, Using Abusive or Obscene Language.  Petitioner was
sanctioned with 15 days of disciplinary segregation and a loss of
13 days of GCT.  The report listed the reasons for the sanctions.
(<u>Id.</u>, Parts VI and VII).

On August 2, 2004, Petitioner was provided a copy of the DHO's
report and was advised of his right to appeal the disciplinary
action within 20 days under the Administrative Remedy Program.
(<u>Id.</u>, Parts VIII and IX).

Petitioner's most recent Traverse asserts:

> The 3 business day rule for UDC was also violated in like
> manner, here.  And, loss of GCT was not warranted for

41

> code 312 violation where there was no evidence that
> Petitioner had repeated code 312 violations within
> previous six months to justify greater sanctions.  And
> the Bureau later destroyed Petitioner's administrative
> remedies - all in violation of due process of law.  <u>Id.</u>
> <u>Wolff</u>, <u>supra</u>.

(# 50 at 6).

The undersigned has already addressed Petitioner's complaint regarding the time of the proceedings and found it to lack merit. To the extent that Petitioner continues to raise this issue in regard to the remainder of the disciplinary actions discussed herein, that argument is specious.

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  <u>See</u> <u>Superintendent, Massachusetts Correctional Institution, Walpole v.</u> <u>Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under Wolff v. McDonnell, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 13 days of GCT as a sanction in this disciplinary action.

*Incident Report No. 1218821*

On May 5, 2004, while housed at FCI Manchester, Petitioner was charged with a violation of code 305, Possession of Anything Unauthorized.  The incident report, which was filed by Senior Officer M. Wagers, states:

> On 05-05-2004 at approximately 6:30 p.m., during a routine area search of cell # 122 in SHU (which is occupied by inmate Kokoski, Register Number 02115-061, Perez, Register Number 14767-424), I found one package containing tobacco, under Kokoski's mattress.  Inmate Kokoski was questioned about these items and claimed ownership.

(# 48, Ex. 1, Attach. 20, Section 11).

A copy of the incident report was provided to Petitioner on May 6, 2004 at 8:05 a.m.  (Id., Sections 14-16).  Petitioner was advised of his rights by the Investigating Lieutenant, and Petitioner refused to give a statement.  (Id., Section 24).

A UDC hearing was held on May 11, 2004.  (Id., Section 21). Petitioner was provided an opportunity to make a statement at the hearing.  He stated, "I was in the shower cell and he yelled down the range and asked if the cigarettes were mine or my cellies and

43

I told him they were mine.  Yes they were mine." (Id., Section 17).  The UDC referred the charges to the DHO for greater sanctions than could be imposed by the UDC.  The UDC recommended 15 days of disciplinary segregation, and a loss of 13 days of GCT.  (Id., Sections 18B, 19 and 20).

On May 11, 2004, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO.  Petitioner indicated that he wanted to have Case Manager S. Messer as a staff representative, and that he did not wish to call any witnesses.  (# 48, Ex. 1, Attach. 21).  Petitioner was also notified of his rights at that time.  (# 48, Ex. 1, Attachs. 21 and 22).

A DHO hearing was held on May 19, 2004.  (# 48, Ex. 1, Attach. 22, Part I, Section B).  Petitioner was advised of his rights and stated that he understood those rights.  (Id., Part III, Section B).  Case Manager S. Messer appeared at the hearing as Petitioner's staff representative.  (Id., Part II, Sections A and B).

Petitioner was provided an opportunity to make a statement at the hearing.  Petitioner stated:

> I claimed it.  I never said it wasn't mine.  They're mine.  I don't have a problem claiming them.  I was just saying in the letter that it was improper for officer Wagers to say on the range, "Are these yours."  I wasn't trying to get away from saying they weren't mine.  The UDC failed to hold its initial hearing within three days, excluding the date staff becomes aware of incident is what policy states.  Let's look at policy.  What's the point of a hearing if we can't look at policy.  It seems like I keep on going through these appeals and it gets shot down.  Your God, do anything you want buddy.

44

(<u>Id.</u>, Part III ).

As noted in the DHO's report and in Respondent's Supplemental Response, Petitioner chose to leave the hearing after making this statement.  His staff representative remained in the hearing, but made no statement.  (# 48 at 13; # 48, Ex. 1, Attach. 23, Part V).

The DHO considered the incident report, and Petitioner's admission, in determining that the greater weight of the evidence supported a finding of guilt.  (<u>Id.</u>, Part V).  Petitioner was sanctioned with 15 days of disciplinary segregation, a loss of 13 days of GCT, and a loss of commissary privileges for six months. The report listed the reasons for the sanctions.  (<u>Id.</u>, Parts VI and VII).

On August 2, 2004, Petitioner was provided a copy of the DHO's report and was advised of his right to appeal the disciplinary action within 20 days under the Administrative Remedy Program. (<u>Id.</u>, Parts VIII and IX).

Petitioner's most recent Traverse asserts:

> The incident report did not allege possession of anything unauthorized; and UDC did not hold a hearing within 3 business days of the alleged incident, excluding weekends and holidays.  Then the Bureau destroyed Petitioner's Administrative Remedies - all in violation of due process under <u>Wolff</u>, <u>supra</u>.  And the reasons for delay were not noted on the incident report by UDC. [28 C.F.R. 541-542].

(# 50 at 7).

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the

evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt.  In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand.  <u>See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15.  (# 15 at 19-20).

    Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under <u>Wolff v. McDonnell</u>, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 13 days of GCT as a sanction in this disciplinary action.

*Incident Report No. 401761*

    On February 5, 2001, an incident report was drafted in regard to Petitioner's prior escape from the prison camp at FCI Beckley on April 28, 1996.[3]  (# 48, Ex. 1, Attach. 24).  Attached to the

---

    [3] Petitioner pled guilty in this federal court to the escape charge, and was sentenced to 37 months imprisonment, which was run consecutively to his prior sentence.  (<u>United States v.</u>

incident report was an Inmate Disciplinary Printout. (<u>Id.</u>, Attach. 25).  Due to his escape, a DHO hearing was held in Petitioner's absence on May 15, 1996.  (# 48, Ex. 1, Attach. 24, section 19). Petitioner received a copy of the incident report on February 5, 2001 at 10:30 a.m.  (<u>Id.</u>, Sections 15 and 16).  A UDC hearing was held on February 7, 2001.  Petitioner admitted his guilt to the UDC, but complained that the prior DHO hearing in absentia deprived him of his rights.  (<u>Id.</u>, Section 17).  Thus, the action was referred to the DHO for an in-person hearing.  (<u>Id.</u>, Sections 18B and 19).

On February 14, 2001, another DHO hearing was held, during which Petitioner admitted his guilt.  He was sanctioned with a loss of 27 days of GCT, 30 days of disciplinary segregation and a disciplinary transfer was recommended.  (# 48, Ex. 1, Attach. 25, p. 6-7).

Petitioner's Traverse asserts:

Petitioner escaped custody in alleged violation of BOP code 201, on April 28, 1996.  Then, he was designated to FCI Manchester on October 30, 2000.  However, UDC did not hear this shot until February 7, 2001.  Thus, the 3 business day rule and Petitioner's due process rights were violated, and the reasons for delay were not noted on the incident report by UDC.  The Bureau then destroyed Petitioner's Administrative Remedies; all in violation of due process under <u>Wolff</u>, <u>supra</u>.

(# 50 at 7).

_____

<u>Kokoski</u>, 5:96-cr-00064 (S.D. W. Va.)(Chambers, J.)  Petitioner was serving the escape sentence at the time he filed the instant section 2241 petition.

The evidence before this court demonstrates that Petitioner was provided with written notice of the charged violations and the evidence against him, he was provided the right to present evidence, he was provided a neutral and detached hearing body, and was provided a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. Petitioner admitted at least some of the facts in evidence, and the DHO found that the greater weight of the evidence supported a finding of guilt. In accordance with Supreme Court precedent and federal regulations, so long as there is some evidence to support the DHO's determination, the decision will stand. See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454-56 (1985); 28 C.F.R. § 541.15. (# 15 at 19-20).

Accordingly, based upon the evidence before this court, the undersigned proposes that the presiding District Judge **FIND** that Petitioner was afforded the rights required under Wolff v. McDonnell, 418 U.S. at 564, and that there was no violation of Petitioner's due process rights in the loss of 27 days of GCT as a sanction in this disciplinary action.

Petitioner's claims that all of these incident reports are "bogus" is disingenuous, considering that he admitted at least some of the conduct that resulted in each of the disciplinary actions where he lost GCT. All that is required to uphold the findings of

48

the DHO is "some evidence" supporting guilt.  The undersigned agrees that there was some evidence to support each finding of guilt that resulted in the loss of Petitioner's GCT.  Thus, Petitioner has not demonstrated a violation of the Due Process Clause of the United States Constitution.

Likewise, Petitioner has not demonstrated a violation of the Ex Post Facto Clause of the United States Constitution.  Title 18, section 3624(b) governs the award of GCT credit.  Section 3624(b)(1) provides that the GCT credit may be awarded; thus, it is discretionary.  18 U.S.C. § 3624(b)(1).  Thus, there is no federal constitutional right to the award of GCT credits, see Hammill v. Wright, 870 F.2d 1032, 1036 (5th Cir. 1989), and the crux of an ex post facto violation is "an absence of forewarning, that is that the change is unexpected." Hallmark v. Johnson, 118 F.3d 1073, 1079 (5th Cir. 1997).  Petitioner knew that there was always a possibility of losing GCT as a result of a disciplinary violation. Thus, he has not stated an ex post facto claim.

To the extent that Petitioner has asserted that the BOP revoked GCT that had already vested, the undersigned will now address that claim.  As noted in Respondent's Response to the Court's Order entered May 23, 2008, all of the GCT at issue in Petitioner's habeas corpus petition was earned and disallowed while Petitioner was serving his 144-month sentence for his first conviction.  (# 52 at 4).  That sentence is governed by the

49

Sentencing Reform Act of 1984 ("SRA"), because the date of Petitioner's offense was December 21, 1991, while the SRA was in effect. (# 52 at 2 and Ex. 1; see also Sentence Computation Manual – CCCA of 1984, p. 1-1).

Under the SRA, Petitioner was eligible for 54 days of GCT per year, which was awarded at the end of each year of the term (based upon Petitioner's anniversary date). (Id., Ex. 1; 18 U.S.C. § 3624(b)(1991)). The BOP has 15 days from the end of each year of the sentence to determine the amount of GCT to be awarded for that year. If Petitioner was disallowed GCT as a result of disciplinary proceedings during that year, up to 54 days of GCT may be subtracted from that year, and only the remainder of the 54 days will vest at that time. Credit that has vested may not later be withdrawn, except in very limited circumstances. Respondent notes that such circumstances may include good cause, an act of misconduct that occurred during the prior year, but did not become known until after the 15-day time period had expired, or when the DHO is unable to dispose of the matter within 15 days. (Id. at 2; see also P.S. 5880.28, p.1-42).

Respondent further notes that credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence. (Id.; see also 18 U.S.C. § 3624(b) (1991); PS 5880.28, p. 1-41).

Taking into account Petitioner's prior custody credit of 927 days, his sentence computation on his first sentence was run from March 6, 1992.  Thus, Petitioner's original anniversary date was March 6, and remained such until his escape from FCI Beckley on April 28, 1996.

Petitioner was returned to federal custody on June 29, 1999, and the BOP was required to treat the 1157 days that Petitioner was on escape status as inoperative time.  (# 52 at 5).  Upon Petitioner's return to FCI Beckley, the BOP combined the time period of March 6, 1996 (Petitioner's anniversary date for that year) to April 28, 1996 (date of Petitioner's escape), and the time period between June 29, 1999 and May 5, 2000, in order to constitute one year of incarceration for determining GCT credit. This caused Petitioner's anniversary date for his first sentence to change to May 6.

Based upon a review of Respondent's Response to the Court's May 23, 2008 Order, the undersigned is convinced that the BOP did not revoke any vested GCT from Petitioner as a result of the subject disciplinary actions.  Although the DHO disallowed 187 days of GCT, because of the 54-day maximum, only 162 days of GCT were actually disallowed, and only the days that remained each year actually vested.  (# 52 at 5-8).

In Petitioner's Traverse to Respondent's Response to the Court's May 23, 2008 Order (# 53), Petitioner requested

51

clarification of the change in his anniversary date, and further stated that, in arriving at his June 5, 2008 release date, the BOP admitted to an error and gave him an additional 10 days of credit. The undersigned's staff requested a clarification from Respondent's counsel and learned that some of the disallowed GCT was taken out of the wrong anniversary year; however, that calculation was corrected, resulting in the additional 10 days of credit.[4]

Petitioner's most recent Traverse also asserts that his second sentence was governed by the SRA, not the Prison Litigation Reform Act, ("PLRA") as stated by Respondent.  (# 53 at 2).  The court finds this assertion to be in error, since the offense was committed after April 26, 1996, the effective date of the PLRA.  At any rate, this issue is irrelevant to Petitioner's instant habeas corpus petition.

Based upon a review of all of the evidence of record, and the explanation of the vesting process by Respondent, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's claim that the BOP revoked vested GCT in violation of the <u>Ex Post Facto</u> Clause, and without due process of law, lacks merit.

---

[4]  According to the BOP's explanation, the disallowed GCT is to come off of the anniversary period in which the incident occurred, not the period during which the incident report or disciplinary action is concluded and the sanction is imposed. Should Petitioner want clarification of the recalculation of his sentence, he should inquire of the BOP, since he is no longer in custody.

For the reasons stated herein, should the presiding District Judge find that Petitioner's claims are not moot, the undersigned proposes that the presiding District Judge **FIND** that the DHO found that there was some evidence to support findings of Petitioner's guilt concerning each of the disciplinary actions that resulted in the disallowance of Petitioner's GCT, that the disciplinary charges that resulted in the loss of GCT are not bills of attainder, and that Petitioner has not demonstrated a violation of his due process rights or any other federal constitutional right, and that Petitioner is not in custody in violation of the Constitution, laws or treaties of the United States and, thus, is not entitled to habeas corpus relief.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus (# 1) and the following motions filed by Petitioner:  Motion for Judgment (# 26), Motion for Judgment and to Expedite Case (# 28), Motion for Judgment to Restore 27 Days Good Time (# 29), Motion for Leave to File Another Motion for Favorable Judgment (# 38), Another Motion for Favorable Judgment (# 39), Motion for Immediate Release (# 43), Motion for Leave to File Motion for Protective Order (# 45), Motion for Protective Order (# 46), and Motion for Leave to File Traverse and Motion for Immediate Consideration (# 50), and to dismiss this civil action from the docket of the court.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 72(b) of the Federal Rules of Civil Procedure, Petitioner shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner at the following address:  Michael Kokoski, c/o Ruby Wilson, 633 Lebanon Road, Clarksville, OH 45113, and to transmit a copy to counsel of record.

_____July 1, 2008_____
            Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge